# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CARLYLE GROUP EMPLOYEE CO., L.L.C.,   :   Index No. _____/18
THE CARLYLE GROUP L.P., and CARLYLE   :   Summons Filed: 1/_____18
COMMODITY MANAGEMENT L.L.C.   :
(FORMERLY VERMILLION ASSET   :   Plaintiff designates New York
MANAGEMENT, LLC),   :   County as the place of trial.
          :
       Plaintiffs,   :   **SUMMONS WITH NOTICE**
   -against-       :
          :   The basis of venue is C.P.L.R. § 503(a)
NIKHIL DHIR,        :   which is the location required by the
      Defendant.    forum selection clause of the agreement
           of the parties, N.Y. Gen. Oblig. Law §
           5-1402, and C.P.L.R. § 501.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**TO THE ABOVE-NAMED DEFENDANT:**

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a

copy of your answer, or, if the complaint is not served with this summons, to serve a notice of

appearance, on the Plaintiffs' attorney within 20 days after the service of this summons, exclusive

of the day of service (or within 30 days after the service is complete if this summons is not

personally delivered to you within the State of New York); and in case of your failure to appear or

answer, Judgment will be taken against you by default for the relief demanded herein.

Dated: New York, New York
    January 12, 2018       SEYFARTH SHAW, LLC

           /s/ Anshel Joel Kaplan_____
           Anshel Joel "AJ" Kaplan
           Lawrence P. Postol (*pro hac vice* forthcoming)
           Seyfarth Shaw, LLC
           620 Eighth Avenue
           32nd Floor
           New York, NY 10018
           (212) 218-5500

           725 F Street, N.W.
           Washington, D.C. 20004
           (202) 463-2400

Scanned by CamScanner

Robert A. Van Kirk (*pro hac vice* forthcoming)
Vidya Atre Mirmira (*pro hac vice* forthcoming)
Joelle P. Justus (*pro hac vice* forthcoming)
WILLIAMS & CONNOLLY LLP
1330 Avenue of the Americas
Suite 23A
New York, NY 10019
Telephone: (646) 949-2800

725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
rvankirk@wc.com
vmirmira@wc.com
jjustus@wc.com

*Attorneys for Plaintiffs*

Scanned by CamScanner

PLEASE TAKE NOTICE that the nature of this action and the relief sought are as follows: This is a case about an individual who violated the clear terms of the mandatory forum selection clause in his employment agreement by filing a lawsuit in a jurisdiction other than the one to which he had agreed.

Before joining Vermillion Asset Management as a Portfolio Manager for the Viridian Fund, Ltd., Defendant Nikhil Dhir signed an Employment Agreement, which he subsequently reaffirmed, that included a mandatory forum selection clause requiring that all suits or actions arising out of the Employment Agreement or with respect to his employment be brought only in the state or Federal courts located in the State of New York.

Despite this mandatory forum selection clause, Mr. Dhir filed suit against Carlyle Group Employee Co, The Carlyle Group L.P., and Vermillion Asset Management (now Carlyle Commodity Management L.L.C.) (collectively "Carlyle") in the United States District Court for the District of Connecticut for claims that arose directly out of his employment. Carlyle and the other defendants in that lawsuit filed a motion to enforce the mandatory forum selection clause and transfer the case to the Southern District of New York. Three months later, Mr. Dhir consented to the venue transfer, and the District Court of Connecticut transferred the case to the Southern District of New York.

By initiating litigation in Connecticut, Mr. Dhir violated the forum selection clause in breach of his Employment Agreement. Carlyle incurred damages as a consequence of this breach, and is entitled to compensatory damages for the losses they suffered as a result, including attorneys' fees and costs.

PLEASE TAKE FURTHER NOTICE that Plaintiffs expressly reserve their right to amend their claims in this action to include other causes of action.

3

Scanned by CamScanner

Upon Defendant's failure to appear, Judgment will be taken against Defendant by default

for the relief demanded in this Summons, including monetary damages and interest, together

with attorneys' fees and the costs and disbursements of this action.

Dated: New York, New York        SEYFARTH SHAW, LLC
       January 12, 2018

/s/Anshel Joel Kaplan
Anshel Joel "AJ" Kaplan
Lawrence P. Postol (*pro hac vice* forthcoming)
Seyfarth Shaw, LLC
620 Eighth Avenue
32nd Floor
New York, NY 10018
(212) 218-5500

725 F Street, N.W.
Washington, D.C. 20004
(202) 463-2400

Robert A. Van Kirk (*pro hac vice* forthcoming)
Vidya Atre Mirmira (*pro hac vice* forthcoming)
Joelle P. Justus (*pro hac vice* forthcoming)
WILLIAMS & CONNOLLY LLP
1330 Avenue of the Americas
Suite 23A
New York, NY 10019
Telephone: (646) 949-2800

725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
rvankirk@wc.com
vmirmira@wc.com
jjustus@wc.com

*Attorneys for Plaintiffs*

4 of 4

Scanned by CamScanner

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CARLYLE GROUP EMPLOYEE CO., L.L.C.,  :  Index No. 650180/2018
THE CARLYLE GROUP L.P., and CARLYLE  :
COMMODITY MANAGEMENT L.L.C.          :
(FORMERLY VERMILLION ASSET           :  Plaintiff designates New York
MANAGEMENT, LLC),                    :  County as the place of trial.
                                     :
                    Plaintiffs,      :  **COMPLAINT**
        -against-                    :
                                     :
NIKHIL DHIR,                         :
                    Defendant.       :
                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        Plaintiffs Carlyle Group Employee Co., L.L.C., The Carlyle Group L.P., and Carlyle

Commodity Management L.L.C. (formerly Vermillion Asset Management, LLC) (collectively,

"Plaintiffs" or "Carlyle"), by their undersigned counsel, hereby allege the following for their

complaint against Defendant Nikhil Dhir:

## NATURE OF THE ACTION

        1.      This is a case about an individual who violated various provisions of his

employment agreement, including the mandatory forum selection provision when he commenced

a lawsuit in a jurisdiction other than in the jurisdiction to which he had expressly agreed.

        2.      Upon joining Vermillion Asset Management, LLC as a Portfolio Manager in

August 2012, Defendant Nikhil Dhir signed an employment agreement, which he subsequently

reaffirmed in writing, which included an express mandatory forum selection provision requiring

that all suits or actions arising out of the employment agreement or with respect to his

employment be brought only in the state or Federal courts located in the State of New York.

        3.      In violation of this mandatory forum requirement, in February 2016, Mr. Dhir

filed suit against Carlyle in the United States District Court for the District of Connecticut,

Scanned by CamScanner

alleging claims with respect to his employment. Carlyle and the other defendants Mr. Dhir named in that action filed a motion to enforce the mandatory forum selection clause and to transfer the case from the District of Connecticut to the Southern District of New York. Three months later, Mr. Dhir consented to the venue transfer, and the District of Connecticut ordered the transfer of the case to the Southern District of New York.

4.    By initiating a suit in a court in the State of Connecticut, Mr. Dhir violated the express forum selection provision in his employment agreement. Plaintiffs incurred damages as a consequence of Mr. Dhir's breach, and are entitled to compensatory damages and contractual indemnification for the losses suffered as a result, including attorneys' fees and costs.

**PARTIES**

**I.**    **Plaintiffs**

5.    Carlyle Group Employee Co., L.L.C. is a Delaware limited liability company that maintains its primary place of business in Washington, D.C. and has an office in New York, New York.

6.    The Carlyle Group L.P. is a publicly traded limited partnership that maintains its primary place of business in Washington, D.C.

7.    Carlyle Commodity Management L.L.C. (formerly, Vermillion Asset Management, LLC) is a Delaware limited liability company with its principal place of business in New York, New York.

**II.**    **Defendant**

8.    Upon information and belief, Nikhil Dhir resides at 4251 Salzedo Street, Unit 607, Coral Gables, Florida, 33146-1450.

Scanned by CamScanner

## JURISDICTION AND VENUE

9.      In his employment agreement, Defendant Nikhil Dhir expressly agreed to "irrevocably submit" himself to the "exclusive personal jurisdiction of the courts of the state and Federal courts located in New York, New York for the purposes of any suit, action or other proceeding arising out of" his employment agreement or with respect to his employment. Defendant Nikhil Dhir also agreed to "irrevocably and unconditionally waive[] any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement or with respect to Employee's employment in the state or Federal courts located in the State of New York." Accordingly, jurisdiction and venue are appropriate pursuant to C.P.L.R. §§ 501, 503(a), and N.Y. Gen. Oblig. Law § 5-1402.

## FACTUAL BACKGROUND

10.     On July 9, 2012, Vermillion Asset Management, LLC ("VAM")[1] sent Nikhil Dhir a letter offering him the position of Portfolio Manager – Oil Products. *See* Employment Agreement (Ex. 1) at 11-12.[2] VAM's offer letter made clear that the offer of employment was contingent upon, among other things, Mr. Dhir's subsequent execution of VAM's "Work Made for Hire" agreement. *Id.* Mr. Dhir signed and returned the offer letter on July 11, 2012. *Id.* at 12.

11.     On August 2, 2012, Mr. Dhir VAM entered into a Restrictive Covenant and Work Made for Hire Agreement (the "Work Made for Hire Agreement"). *Id.* at 14-20.

---

[1] On August 26, 2015, Vermillion Asset Management, LLC's name was changed to Carlyle Commodity Management L.L.C.

[2] "Employment Agreement" collectively refers to the October 1, 2012 letter from The Carlyle Group Employee Co., L.L.C., to Mr. Dhir, which attached and incorporated by reference (among other documents) the July 9, 2012 Offer Letter from VAM to Mr. Dhir, and the Restrictive Covenant and Work Made for Hire Agreement with VAM that Mr. Dhir signed on August 2, 2012.

3

Scanned by CamScanner

12.    Paragraph 14 of the Work Made for Hire Agreement, titled "**Governing Law,**

**Consent to Jurisdiction; Waiver of Jury Trial**" (emphasis in the original), contains a

mandatory forum selection clause requiring that that all suits or actions arising out of the Work

Made for Hire Agreement or with respect to Mr. Dhir's employment be brought in the state or

Federal courts located in the State of New York. The clause reads as follows:

> The Parties hereto hereby *irrevocably submit themselves to the exclusive personal jurisdiction of the courts of the state and Federal courts located in New York,* New York for the purposes of any suit, action or other proceeding arising out of this Agreement or with respect to Employee's employment hereunder.

*Id.* at 18 (emphasis added).

13.    Paragraph 14 of the Work Made for Hire Agreement further states:

> Each Party hereto *irrevocably and unconditionally waives any objection to the laying of venue of any action,* suit or proceeding arising out of this Agreement or with respect to Employee's employment *in the state or Federal courts located in the State of New York* and hereby irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in such court has been brought in an inconvenient forum.

*Id.* (emphasis added).

14.    Paragraph 14 of the Work Made for Hire Agreement further states:

> Employee and the Company hereby (i) *expressly waive any right to a trial by jury* in any action or proceeding to enforce or defend any right, power or remedy under or in connection with this Agreement or arising from any relationship existing in connection with this Agreement, and (ii) *agree that any such action shall be tried before a court and not before a jury.*

*Id.* (emphasis added).

15.    In October 2012, Carlyle affiliates acquired a majority equity interest in VAM.

On or about October 1, 2012, Mr. Dhir entered into a letter agreement with Carlyle wherein Mr.

Dhir expressly acknowledged and agreed, *inter alia*, that Carlyle Employee Co., L.L.C. would

become Mr. Dhir's employer of record effective as of January 1, 2013 and that Carlyle had the

4

4 of 8

Scanned by CamScanner

right to enforce VAM's rights under Mr. Dhir's Work Made for Hire Agreement for the benefit of VAM as if Carlyle and its affiliates were a party thereto. *Id.* at 1-5.

16.     On or about January 29, 2015, VAM notified Mr. Dhir that his employment would be terminated, which became effective March 1, 2015.

17.     On or about February 9, 2016, Mr. Dhir filed a complaint against Carlyle in the United States District Court for the District of Connecticut, alleging claims arising directly out of his employment. In his complaint, Mr. Dhir demanded a trial by jury and sought recovery for "breach of contract for defendants' failure to pay plaintiff's earned incentive compensation, as agreed"; for "unpaid wages" under Connecticut and New York state labor laws; and for wrongful termination in violation of Dodd-Frank. Sarbanes-Oxley, and Connecticut whistleblower law.

18.     On or about April 15, 2016, Carlyle filed a motion to dismiss, and a motion to enforce the mandatory forum selection clause in the Work Made for Hire Agreement and transfer the case from the District of Connecticut to the Southern District of New York.

19.     On or about July 5, 2016, Mr. Dhir consented to this transfer of venue.

20.     On or about July 14, 2016, the District of Connecticut transferred the case to the Southern District of New York.

21.     On or about November 14, 2016, Mr. Dhir filed a revised second amended verified complaint in the Southern District of New York alleging various claims arising from his employment, again demanding a trial by jury.

22.     Mr. Dhir's Work Made for Hire Agreement also includes multiple provisions that explicitly provide for an award of attorneys' fees in the case of a breach, including:

> Section 11 ("Remedies"): "Employee agrees that, in the event of any actual or threatened breach, the Company shall be entitled to injunctive and other equitable relief... as well as any other remedies available to it, including monetary damages. Employee shall pay costs and expenses, *including attorneys' fees and*

5

Scanned by CamScanner

> *court costs*, the Company incurs in obtaining any judicial relief or in otherwise enforcing any of Employee's obligations or the Company's rights under this Agreement . . . ."

Ex. 1 at 18 (emphasis added).

23.    Mr. Dhir's Work Made for Hire Agreement also includes an indemnification provision that he shall reimburse and indemnify Carlyle, and hold Carlyle harmless against, "any and all actions, damages, losses, claims, demands, costs and liabilities" that are incurred by Carlyle in connection with or arising out of Mr. Dhir's "breach of any of his obligations, warranties, or representations set forth herein, or other violations of this Agreement." *Id.* at 17.

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT

24.    Plaintiffs repeat the allegations in paragraphs 1 through 23 as though fully set forth herein.

25.    By initiating a suit in a court in the State of Connecticut, Mr. Dhir breached the forum selection clause in his Work Made for Hire Agreement, which provides for "exclusive personal jurisdiction" of courts in the State of New York.

26.    Plaintiffs incurred damages as a consequence of Mr. Dhir's breach. Plaintiffs are entitled to damages for the losses they suffered as a result of Mr. Dhir's breach of contract.

27.    Any and all conditions precedent to the enforcement of the forum selection clause have been performed or satisfied.

## SECOND CAUSE OF ACTION: CONTRACTUAL INDEMNIFICATION

28.    Plaintiffs repeat the allegations in paragraphs 1 through 27 as though fully set forth herein.

29.    By initiating a suit in a court in the State of Connecticut, Mr. Dhir breached and violated the Work Made for Hire Agreement.

6

Scanned by CamScanner

30.   By failing to adhere to the jury trial waiver, Mr. Dhir breached and violated the Work Made for Hire Agreement.

31.   Plaintiffs incurred damages as a result of Mr. Dhir's breaches.

32.   Mr. Dhir is obligated to reimburse and indemnify Carlyle, and hold Carlyle harmless against, "any and all actions, damages, losses, claims, demands, costs and liabilities" that are incurred by Carlyle in connection with or arising out of Mr. Dhir's breaches and violations of the Work Made for Hire Agreement.

## PRAYER FOR RELIEF

Plaintiffs ask this Court to award damages not less than $225,000 or an amount to be proven at trial, interest, and any and all other appropriate relief to compensate for Nikhil Dhir's breaches of his employment agreement and to enforce the indemnification provision of his employment agreement.

January 14, 2018

SEYFARTH SHAW, LLP

/s/ Anshel Joel Kaplan
Anshel Joel "AJ" Kaplan
Lawrence P. Postol (*pro hac vice* forthcoming)
Seyfarth Shaw, LLP
620 Eighth Avenue
32nd Floor
New York, NY 10018
(212) 218-5500

725 F Street, N.W.
Washington, D.C. 20004
(202) 463-2400

Robert A. Van Kirk (*pro hac vice* forthcoming)
Vidya Atre Mirmira (*pro hac vice* forthcoming)
Joelle P. Justus (*pro hac vice* forthcoming)
WILLIAMS & CONNOLLY LLP
1330 Avenue of the Americas
Suite 23A
New York, NY 10019
Telephone: (646) 949-2800

7

7 of 8

Scanned by CamScanner

725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
rvankirk@wc.com
vmirmira@wc.com
jjustus@wc.com

*Attorneys for Plaintiffs*

8

Scanned by CamScanner

# EXHIBIT 1

Scanned by CamScanner

October 1          , 2012

Nikhil Dhir
66 Water St, Apt 2E
New York NY 11201

Dear Nikhil Dhir:

As you know, TC Group L.L.C. and its affiliates, collectively operating under the trade name "The Carlyle Group," is working to complete the acquisition of a controlling interest in Vermillion Asset Management, LLC ("VAM") (the "Transaction"). On the date of the Transaction, you will continue to provide your services solely to VAM, as you have before, and you will continue to be subject to VAM's applicable policies and procedures. As a technical matter, as of January 1, 2013, you will become an employee of The Carlyle Group Employee Co. ("Carlyle"). On a going forward basis, you will receive your compensation and health and welfare benefits from Carlyle, and, from the closing of the Transaction, you will be expected to sign and comply with the compliance policies and procedures applicable to VAM and Carlyle (and its affiliates') employees (including the New York Attorney General's Code of Conduct, the Prospective Employee Certificate in the form attached as Attachment A (a copy of which you have agreed to and returned to Carlyle together with your signature to this letter) and recurring background or security checks)

Following the Transaction, your annual base salary will be $190,437.12, and you will be entitled to 15 vacation days per calendar year; in each case, such benefits will be administered in accordance with Carlyle's applicable policies and procedures.

In connection with you becoming an employee of Carlyle, VAM is assigning, and Carlyle agrees to assume, all of VAM's duties, rights and responsibilities under the offer letter you entered into with VAM dated as of July 9, 2012 (the "Original Offer Letter"), as attached and incorporated by reference as Attachment B-1. Thus, your compensation and other payments and benefits provided by Carlyle will satisfy those obligations in place of, and in substitution for, VAM. VAM will retain the right to enforce all VAM policies and procedures while you continue to provide your services at VAM.

In connection with you continuing your employment with Carlyle, you hereby acknowledge and agree that (a)(i) Carlyle will replace VAM or Company, as applicable, with respect to being your employer, and the source of compensation and benefits under the Original Offer Letter, and (ii) you will abide by the applicable policies and procedures instituted by Carlyle for employees after the closing of the Transaction; and (b) you consent to the foregoing, as of the date of the Transaction, and waive any objection to Carlyle assuming these duties, rights and responsibilities.

The restrictive covenant and work made for hire agreement you entered into with VAM, dated as of August 2, 2012 (the "Restrictive Covenant Agreement" and, together with the Original Offer Letter, the "Agreements"), as attached and incorporated by reference as Attachment B-2, will remain with VAM; provided, however, that Carlyle and its affiliates will have the right to enforce such rights for the benefit of VAM as if Carlyle and its affiliates were a party to the Restrictive Covenant Agreement, in each case, effective as of the closing of the Transaction; provided, further, that solely with respect to provisions related to non-disclosure and the use of confidential information in Section 2 and non-disparagement in Section 8 of the Restrictive Covenant Agreement, Carlyle and its affiliates will be able to enforce such rights on its own behalf (collectively, the "Specified Provisions of the Restrictive Covenant Agreement").

Except as set forth in this letter, the Agreements will remain in full force and effect.

Exhibit 1 - Page 1 of 21

Scanned by CamScanner

This letter, together with the Agreements, collectively represent the entire understanding and agreement among the parties hereto with respect to this subject matter and supersede all prior written and oral discussions and/or agreements among the parties hereto with respect to this subject matter. This letter, the Original Offer Letter and the Specified Provisions of the Restrictive Covenant Agreement may not be altered, modified or amended except by written instrument signed by you, Carlyle and VAM.

This letter will be governed by and construed in accordance with the laws of the State of New York, without regard to conflicts of laws

This letter may be executed by fax or .pdf and in any number of counterparts, all of which, when taken together, shall constitute one and the same instrument.

[*The remainder of this page intentionally left blank.*]

Exhibit 1 - Page 2 of 21

Scanned by CamScanner

CARLYLE:      THE CARLYLE GROUP EMPLOYEE CO., L.L.C.

By:

Name:  Daniel A. D'Aniello
Title:   Chairman

[Signature page to Assignment]

Exhibit 1 - Page 3 of 21

Scanned by CamScanner

EMPLOYEE:

Name: _____
Name Here

Scanned by CamScanner

**Attachment A**

**Prospective Employee Certificate**

A-1

Exhibit 1 - Page 6 of 21

Scanned by CamScanner

## PROSPECTIVE EMPLOYEE CERTIFICATE

The Carlyle Group
1001 Pennsylvania Avenue, N.W.
Suite 220 South
Washington, D.C. 20004

Nikhil Dhir
66 Water St, Apt 2E
New York NY 11201

Dear Nikhil Dhir:

The Carlyle Group ("Carlyle") is subject to a number of restrictions with regard to its interactions with U.S. state and local government entities (including public pension funds), including, most significantly, the New York Attorney General's Public Pension Fund Reform Code of Conduct, as adopted by Carlyle on May 14, 2009 (the "Code") and Rule 206(4)-5 under the Investment Advisers Act of 1940 (the "SEC Pay-to-Play Rule"). Carlyle has adopted certain written procedures (the "Procedures") in order to set forth the internal safeguards and other measures designed to monitor and ensure compliance with the Code and the SEC Pay-to-Play Rule. We therefore ask you to make the following certifications and covenants, which are necessary to ensure Carlyle's compliance with the Procedures. Please note that the accuracy of, and your continued compliance with, these certifications and covenants are conditions to your continued employment.

You, the undersigned, hereby certify and covenant to Carlyle as follows:

1.    The undersigned has been provided with a copy of the Code and Carlyle's Executive Summary of the Procedures. The undersigned has carefully reviewed, and agrees to at all times comply with, therewith. The undersigned has been afforded the opportunity to ask questions of Carlyle concerning the Procedures and to obtain any additional information necessary to make the representations, warranties and covenants contained in this certificate on an informed basis. Carlyle will provide training to the undersigned of the requirements set forth in the Procedures.

2.    Within the past two years, the undersigned has made no Contribution to (a) any person (including any election committee for a person) who was, at the time of such Contribution, an incumbent, candidate or successful candidate for an elective office of a Government Entity, if the office is, or has the authority to appoint any person who, directly or indirectly, is responsible for, or can influence the outcome of, a Government Entity's investment with, or engagement of, Carlyle or (b) any Public Pension Fund Official, unless in each case (i) such Contribution did not exceed US$300 to any one such official or Public Pension Fund Official in any election and (ii) the undersigned was entitled to vote for such person at the time of such Contribution.

3.    Within the past two years, the undersigned has not served as a Public Pension Fund Official or an employee or fiduciary of any Public Pension Fund.

4.    To the best of the undersigned's knowledge after inquiry based on the undersigned's best efforts, the undersigned does not have any financial, commercial or business relationship (whether direct or indirect) with any Public Pension Fund Official, Public Pension Fund Advisor, employee or fiduciary of a Public Pension Fund or any person related to the foregoing by blood or affinity (including a domestic partner and any person adopted into a family) who resides in the same household unless such relationship has been disclosed in writing to, and acknowledged by, Carlyle prior to the date hereof.

Exhibit 1 - Page 7 of 21

Scanned by CamScanner

For the purposes of this certificate,

1. "Contribution" shall mean any gift, subscription, loan, advance, or deposit of money or anything of value made for (i) the purpose of influencing any election for federal, state or local office, (ii) payment of debt incurred in connection with any such state or local election or (iii) transition or inaugural expenses of the successful candidate for any such state or local election.

2. "Government Entity" shall mean a state or political subdivision of a state, including:

    (a) any agency, authority, or instrumentality of the state or a political subdivision;

    (b) any plan or pools of assets sponsored, established or controlled by the state or a political subdivision or any agency, authority or instrumentality thereof, including, but not limited to a "defined benefit plan" as defined in section 414(j) of the Internal Revenue Code or a state general fund;

    (c) any participant-directed investment program or plan sponsored or established by the state or a political subdivision or any agency, authority or instrumentality thereof, including, but not limited to, a "qualified tuition plan" authorized by section 529 of the Internal Revenue Code, a retirement plan authorized by section 403(b) or 457 of the Internal Revenue, or any similar program or plan; and

    (d) officers, agents, or employees of the state or political subdivision or any agency, authority or instrumentality thereof, acting in their official capacity.

3. "Government Entity Advisor" shall mean any external firm or individual engaged by a Government Entity to assist in the selection of investments or Investment Management Services for the Government Entity.

4. "Official" shall mean any person (including any election committee for the person) who was, at the time of a Contribution, an incumbent, candidate or successful candidate for an elective office of a Government Entity, if the office:

    (a) is directly or indirectly responsible for, or can influence the outcome of, the Government Entity's investment with or engagement of the Investment Firm, or

    (b) has authority to appoint any person who is directly or indirectly responsible for, or can influence the outcome of, the Government Entity's investment with or engagement of the Investment Firm.

    Communication with an Official includes communications with the employees and advisors of such Official.

5. "Public Pension Fund" shall mean any retirement plan established or maintained for its employees (current or former) by the Government of the United States, the government of any U.S. state or political subdivision thereof, or by any agency or instrumentality of any of the foregoing.

6. "Public Pension Fund Advisor" shall mean any external firm or individual engaged by a Public Pension Fund to assist in the selection of investments or Investment Management Services for the Public Pension Fund.

Exhibit 1 - Page 8 of 21

Scanned by CamScanner

NYSCEF DOC. NO. 3    RECEIVED NYSCEF: 01/14/2018

7.  "Public Pension Fund Official" shall mean any elected or appointed trustee or other official, staff member or employee whose official duties involve responsibility for a Public Pension Fund.

Very Truly Yours,

The Carlyle Group

Acknowledged and agreed
as of ___October 1___, 2012

Name: Nikhil Dhar

Exhibit 1 - Page 9 of 21

Scanned by CamScanner

**Attachment B-1**

**Current Offer Letter**

Scanned by CamScanner



July 9, 2012

Nikhil Dhir
3333 Allen Parkway, Apt 309
Houston, TX 77019

Dear Nikhil:

We are very pleased to offer you the position of Portfolio Manager – Oil Products at Vermillion Asset Management LLC ("VAM" or the "Company"). You will report to Sean Brennan and Drew Gilbert and have the duties and responsibilities typically associated with your position. Your official start date will be August 2, 2012.

Your compensation package will consist of a base salary and eligibility for a discretionary annual bonus. Your base salary will be $ 15,833 per month, which is $190,000 annually, paid in accordance with the Company's standard payroll practices. The amount of discretionary bonus, if any, will depend upon the Company's assessment of your performance, the performance of VAM and the funds as a whole. Any bonus amounts are subject to the Company's Deferred Compensation Plan and are distributed after receipt of VAM's performance fees and finalized audits of the funds. For 2012 your deferral will be 30%.

You will also be eligible to participate in all benefit plans offered by the Company, which at present include group medical and dental insurance, 401K plans, etc. Additionally, you will receive fifteen days of paid vacation time per calendar year, which shall accrue monthly and be prorated for any partial year of employment. You will also receive three (3) personal days each calendar year, also prorated. All vacation and personal time is subject to the Company's policies regarding same, as may be in effect from time to time. Based on your start date, for the 2012 year, you will have 2 personal day and 6 vacation days. While the Company expects to continue offering the same or similar employee benefits as are presently in effect, you should understand that VAM has the right to modify, alter, change or discontinue any or all such plans at any time.

In addition to the above, the Company will reimburse you up to $20,000 for moving expenses, including any potential repayment of moving expenses to your current employer. All payments will be made against presentation of receipts and/or documentation of expenses.

During your employment, we want you to devote your best efforts and full business time and attention to the Company. As such, we expect that you will not engage in outside business activities that could detract from or interfere with the fulfillment of the responsibilities of your position.

Please be advised that this letter does not constitute an employment contract, and that your employment with the Company is on an at-will basis. The offer contained in this letter is contingent upon the completion of satisfactory final reference and background checks on you, and your execution of the Company's Employee Work Made For Hire, Confidentiality, Non-Interference, Non-Competition and

Exhibit 1 - Page 11 of 21

Scanned by CamScanner

Non-Association Agreement. This letter supersedes any prior oral or written agreements or understandings with the Company and cannot be changed except in a writing signed by the Company's Management Committee.

Please indicate your acceptance of this offer by signing in the space provided below and returning one copy of this letter to me at your earliest convenience, but in any event, no later than July 11, 2012. Should you have any questions, please feel free to call Chris Zuech at 212 683-8816.

We are excited to have you join us, and look forward to a long and mutually beneficial relationship.

Sincerely,

Vermillion Asset Management LLC


Andrew Gilbert
Managing Partner


Christopher Zuech
Chief Operating Officer




ACCEPTED:


Nikhil Dhir

07/11/12
Date

Exhibit 1 - Page 12 of 21

Scanned by CamScanner

## Attachment B-2

**Restrictive Covenant Agreement**

B-2

Exhibit 1 - Page 13 of 21

Scanned by CamScanner

<u>RESTRICTIVE COVENANT AND WORK MADE FOR HIRE AGREEMENT</u>

As a condition to, and in consideration of the future or continued employment by and compensation from Vermillion Asset Management LLC (the "Company") to Nikhil Dhir ("Employee"), and for other good and valuable consideration, the Company and Employee enter into this RESTRICTIVE COVENANT AND WORK MADE FOR HIRE AGREEMENT (this "Agreement"), dated as of August 2, 2012.

1.     <u>Work</u>.

    1.1    <u>Work</u>. "Work" means any and all materials, information and data, including all inventions, discoveries, improvements, trade secrets, original works of authorship, algorithms, computer programs (including, but not limited to, source code and object code), trading, investment and quantitative strategies, methodologies and techniques, and risk management models, all documentation relating to the foregoing, and all intellectual property therein, whether or not patentable or registrable under copyright or similar laws, which Employee, alone or jointly creates, conceives, develops, reduces to practice, or causes another to create, conceive, develop or reduce to practice  Notwithstanding anything in this Agreement to the contrary, the definition of "Work" does not include, and this Agreement does not apply to, any invention developed by Employee (i) entirely on his own time and (ii) without the use of any equipment, supplies, facilities or trade secret information of the Company, unless such invention (x) relates to the Company's business or its actual or demonstrably anticipated research or development or (y) results from any work performed by Employee for the Company or any of its affiliates or funds.

    1.2    <u>Work Made for Hire and Assignment</u>. Employee understands and hereby agrees that to the extent permitted by law, the Work shall be deemed a "work made for hire" within the meaning of that term under United States Copyright Act, 17 U.S.C. §§ 101 et seq., as amended or superseded. Employee hereby assigns and transfers to the Company, effective with respect to each item of Work as of the date of its creation, any and all rights, title and interest Employee may have or may acquire in and to the Work (including, but not limited to, any Work not deemed, for whatever reason, to have been created as a work made for hire), in any and all media, languages, territories and jurisdictions throughout the world, now known or hereafter devised, including, but not limited to, any and all intellectual property rights in the Work, and the right to prosecute and recover damages for all past, present and future infringements or other violations of the Work.

    1.3    <u>Use of the Work</u>. The Company shall have the unrestricted right to display, publish, perform, record, copy, broadcast, distribute, modify, translate, transfer, combine with other information or materials, create derivative works based on, or otherwise use or exploit for any purpose, the Work and any portion thereof, in any manner or media throughout the world, as the Company may in its sole discretion determine. Employee hereby irrevocably waives and assigns to the Company any and all so-called moral rights or "droit moral" Employee may have in or with respect to any Work. Notwithstanding the foregoing, nothing contained herein will require the Company to exercise or exploit any of the Company's rights in or to the Work.

    1.4    <u>Delivery</u>. Upon the termination of Employee's relationship with the Company for any reason, and/or upon the Company's request, Employee shall promptly (i) disclose to the Company all Work; (ii) deliver to the Company all records, notes, sketches, drawings,

Exhibit 1 - Page 14 of 21

Scanned by CamScanner

diagrams, prototypes, memoranda, discs, tapes, CD-ROMs, source code, and any other documentation or other tangible materials or media in Employee's possession or control that in any way embody, comprise, incorporate, or reflect the Confidential Information or any Work, including all copies thereof then in Employee's possession or control (collectively, the "Records"); and (iii) certify in writing to the Company that Employee has fully complied with the foregoing. In addition, Employee represents and warrants to the Company that he has (x) disclosed to the Company all Work created or developed as of the date hereof and (y) delivered to the Company all Records that in any way embody, comprise, incorporate or reflect such Work.

1.5    Further Documentation. During his employment with the Company, Employee shall maintain current and accurate records of all Work. Upon the Company's request, Employee shall promptly execute and deliver to the Company any and all further assignments, patent applications, or such other documents as the Company may deem necessary to effectuate the purposes of this Agreement and to vest in the Company any of the Company's rights in the Confidential Information and/or any Work. Employee hereby appoints the Company as his attorney-in-fact with full power to execute, acknowledge, deliver and record any and all such documents Employee fails to execute within five (5) business days after the Company's request therefor. This appointment shall be a power coupled with an interest.

2.    Non-Disclosure and Use of Confidential Information.

2.1    Definition. During employment with the Company, Employee will have access to (i) trade secrets and other non-public information relating to the Company or its affiliates or funds, which may include but not be limited to: trading or investment strategies, methodologies, and results; trading or investment systems; investment or investment instrument positions; risk management models; revenue models; quantitative and other strategies and methodologies, procedures, techniques, and investment positions of the Company or its affiliates or funds; business plans and strategies, pricing and other financial information; lists of investors, clients, vendors and suppliers of the Company or its affiliates or funds; any confidential information of any such investors, clients, vendors or suppliers; the source code; and any non-public information or data comprising or related to the Work; and other proprietary technologies and processes, and other proprietary information used by the Company or its affiliates or funds in connection with their respective businesses and/or which the Company or any of its affiliates or funds is obligated to any third party to maintain as confidential, or (ii) any information concerning the Company's or its affiliates' or funds' investment or trading performance, including, but not limited to, the profits and losses therefrom, return on investment and other performance or "track record" information, (collectively, the "Confidential Information"). Employee acknowledges that the Confidential Information is vital, sensitive, confidential and proprietary to the Company and/or its affiliates or funds. Notwithstanding the generality of the foregoing, clause (i) of the definition of "Confidential Information" does not include any information, materials, or data that: (x) becomes rightfully known to Employee other than as a result his employment with the Company or any affiliate or fund of the Company; or (y) is or becomes generally available to the public other than as a result of Employee's unauthorized direct or indirect acts.

2.2    Non-Disclosure and Use. During and after Employee's employment with the Company, Employee shall (i) hold the Confidential Information in the strictest confidence and take

Exhibit 1 - Page 15 of 21

Scanned by CamScanner

NYSCEF DOC. NO. 3

RECEIVED NYSCEF: 01/14/2018

all reasonable precautions to prevent the inadvertent disclosure of Confidential Information to any unauthorized individual or entity; and (ii) not disclose or otherwise use the Confidential Information in any manner or medium whatsoever, except as required to perform Employee's duties for the Company or with the Company's prior written consent.

3.   Warranty.

3.1   Prior Agreements. Except as otherwise disclosed via your email dates, June 22, 2012, Employee hereby represents and warrants that Employee is not bound by any agreement or obligation that directly or indirectly: (i) restricts Employee from competing with, or soliciting actual or potential clients, investors or business from, any person or entity; (ii) restricts Employee from soliciting any current or former employees of any person or entity; (iii) limits Employee's ability to perform assigned duties for the Company; or (iv) prohibits, restricts, limits, would be breached by, or otherwise would be in conflict with, Employee's employment with the Company and performance of his duties in connection therewith.

3.2   Work. Employee has not previously granted, pledged or made any other disposition to any individual or entity of any right, title or interest in or to the Work and shall not make any such disposition to any individual or entity other than the Company; (i) the Work (excluding any materials submitted by the Company to Employee) is and will be original creations by Employee and does not and will not improperly use or disclose any trade secrets or confidential information or other property of any former employer of Employee or of any other third party; and (ii) neither the Work nor the production, exploitation and/or use by the Company of the Work or any portion thereof (excluding any materials submitted by the Company to Employee), in any manner or media throughout the world, will, to Employee's knowledge, in any way infringe or otherwise violate any intellectual property, privacy or other right of any individual or entity.

4.   Non-Interference with Relationships. During the term of Employee's employment with the Company and for a period of three (3) years following the effective date of termination of Employee's employment with the Company (the "Termination Date"), Employee shall not, directly or indirectly, alone or in combination with any other individual, enterprise or entity, (i) employ, offer employment to, or otherwise attempt to hire, as an employee, consultant, owner, independent contractor or otherwise, or persuade or encourage the termination of employment with or engagement by the Company or its affiliates or funds (or assist any other individual or entity to take any such action regarding), any individual who was employed or engaged by the Company or any of its affiliates or funds during the twelve (12) month period prior to the Termination Date or during the six (6) month period following the Termination Date (the "Covered Period"); or (ii) solicit or attempt to solicit business related to the Company's business from any individual or entity that was an investor, client, strategic partner or joint venturer of the Company or any of its affiliates or funds during the Covered Period.

5.   Non-Competition. During the term of the Employee's employment with the Company and for a period of six (6) months following the Termination Date, Employee shall not, directly or indirectly, alone or in combination with any other individual, enterprise or entity, own (other than through the passive ownership of less than one percent (1%) of the publicly traded shares of any entity), manage, engage or participate in, control or otherwise assist, any individual, enterprise or entity (other than the Company), that: (i) engages in or proposes to engage in the business of operating, managing, forming or sponsoring hedge funds, commodity

Exhibit 1 - Page 16 of 21

Scanned by CamScanner

pools or other similar private collective investment vehicles, trading for its own account, or otherwise providing investment advisory or asset management services, and (ii) employs any trading strategies employed or actively planned to be employed by the Company or any of its affiliates or funds during Employee's employment with the Company, and (iii) is deemed a direct competitor by the Company.

6.  **Non-Competition Extension**. The Company, at its sole and absolute discretion may extend the Non-Competition term, as described in Section 5 to a period of up to twelve (12) months provided that the Company continue to pay Employee's base salary, at the Employee's base salary rate as of the Termination Date, for the period which the Company desires to extend the Non-Competition provisions.

7.  **Non-Association**. Without limiting the Employee's obligations under Sections 4 and 5 hereof, during the term of the Employee's employment with the Company and for a period of eighteen (18) months following the Termination Date, Employee shall not, directly or indirectly, alone or in combination with any other individual, enterprise or entity, own (other than through the passive ownership of less than one percent (1%) of the publicly traded shares of any entity), operate, manage, control, engage in or participate in any manner in, act as a consultant or advisor to, render services for, or otherwise assist, any individual or entity (other than the Company), that: (i) engages (whether as an employee, independent contractor, consultant, owner or otherwise) any individual employed or engaged by the Company or any of its affiliates or funds during the Covered Period, and (ii) directly or indirectly engages in or proposes to engage in the business of operating, managing, forming and sponsoring hedge funds, commodity pools and other similar private collective investment vehicles, engaging in trading for its own account or otherwise providing investment advisory and asset management services.

8.  **Non-Disparagement**. Employee hereby undertakes and agrees that, during the term of Employee's employment with the Company and thereafter, Employee shall not in any way disparage, slander, libel or through any means take action intended to be detrimental to the Company, any of its affiliates or funds, or any of their respective services, personnel or operations.

9.  **Restrictive Covenants**. Employee acknowledges and agrees that the covenants set forth in Sections 4, 5 and 6 (collectively, the "Restrictive Covenants") are reasonable and necessary for the protection of the business of the Company and its affiliates or funds. Prior to becoming employed or engaged by, or otherwise providing services to, any individual, enterprise or entity engaged in the financial markets, Employee shall disclose the existence and the terms of the Restrictive Covenants and the prohibition on Employee's disclosure and use of the Work and Confidential Information set forth herein to any future employer or other individual, enterprise or entity to which Employee may provide services.

10.  **Indemnification**. Employee shall reimburse and indemnify the Company, and hold the Company harmless against, any and all actions, damages, losses, expenses, claims, demands, costs and liabilities (including reasonable attorneys' fees and court costs), incurred by the Company in connection with or arising out of (i) Employee's breach of any of his obligations, warranties or representations set forth herein, or other violations of this Agreement; (ii) any claim by a third party that the Work or any portion thereof infringes or otherwise violates any intellectual property, privacy or other right of such party; or (iii) any claim by any of Employee's prior employers or by any other third party arising out of Employee's prior employment or engagement, including any claim related to a breach or violation by Employee of any restrictive covenant to which Employee was or is subject.

Exhibit 1 - Page 17 of 21

Scanned by CamScanner

11. **Remedies.** Employee acknowledges that the covenants in this Agreement are reasonable and necessary for the protection of the Company's business interests, that irreparable injury will result to the Company or its affiliates or funds if Employee breaches any term of this Agreement, and that in the event of Employee's actual or threatened breach, the Company may not have an adequate remedy at law. Employee agrees that, in the event of any actual or threatened breach, the Company shall be entitled to injunctive and other equitable relief (without the necessity of showing actual monetary damages or of posting any bond or other security), as well as any other remedies available to it, including monetary damages. Employee shall pay costs and expenses, including attorneys' fees and court costs, the Company incurs in obtaining any judicial relief or in otherwise enforcing any of Employee's obligations or the Company's rights under this Agreement, provided however that if a court were to find in favor of the Employee, Employee would be under no obligation to pay the costs and expenses of the Company.

12. **Return of Company Property.** Upon the termination of Employee's employment, or at the Company's request, Employee shall promptly deliver to the Company all Company property then in his possession, custody or control, including, without limitation, all Confidential Information, including all documents or other items containing, summarizing, or describing any Confidential Information, including all originals and copies, whether in paper or computer-stored form.

13. **Severability and Modification.** If any clause, term or provision of this Agreement, or the application thereof to any individual, entity or circumstance, shall be deemed by a court of competent jurisdiction to be invalid or unenforceable, then the remainder of this Agreement and the application of such clause, term or provision to individuals, entities or circumstances other than those in respect of which it is invalid and unenforceable, shall not be affected thereby, and shall be valid and be enforced to the fullest extent permitted by law. If any court of competent jurisdiction shall deem any provision of this Agreement too restrictive, the other provisions shall stand, and the court shall modify the provision at issue to the point of greatest restriction permissible by law.

14. **Governing Law; Consent to Jurisdiction; Waiver of Jury Trial.** This Agreement and the rights and obligations of the Parties hereunder shall be governed in all respects, including validity, interpretation and effect, by the laws of the State of New York, without regard to its rules of conflicts of law. The Parties hereto hereby irrevocably submit themselves to the exclusive personal jurisdiction of the courts of the state and Federal courts located in New York, New York for the purposes of any suit, action or other proceeding arising out of this Agreement or with respect to Employee's employment hereunder. Each Party hereto irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement or with respect to Employee's employment in the state or Federal courts located in the State of New York and hereby irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in such court has been brought in an inconvenient forum. Employee and the Company hereby (i) expressly waive any right to a trial by jury in any action or proceeding to enforce or defend any right, power or remedy under or in connection with this Agreement or arising from any relationship existing in connection with this Agreement, and (ii) agree that any such action shall be tried before a court and not before a jury. The terms and provisions of this Section 13 constitute a material inducement for the Parties entering into this Agreement.

15. **Miscellaneous.** This Agreement supersedes any and all prior oral or written agreements between the Parties, and constitutes the entire agreement between Employee and the Company, with respect to the subject matter hereof. No modification or amendment of this Agreement, or any waiver of any right, power, or privilege under this Agreement, will be binding upon either the

Exhibit 1 - Page 18 of 21

Scanned by CamScanner

NYSCEF DOC. NO. 3                                                    RECEIVED NYSCEF: 01/14/2018

Company or Employee unless set forth in a writing signed by the Company and Employee. No failure on the part of Employee or the Company to exercise, and no delay in exercising, any right, power or privilege hereunder operates as a waiver thereof; nor does any single or partial exercise of any right, power or privilege hereunder preclude any other or further exercise thereof, or the exercise of any other right, power or privilege. Employee may not assign this Agreement without the prior written consent of the Company. All rights granted to the Company under this Agreement shall extend also to the Company's assignees and successors in interest. This Agreement may be executed by the parties in two separate counterparts, and such counterparts so executed together shall constitute one agreement binding on both Parties.

*Employee understands that executing and agreeing to be bound by this Agreement is a condition to and prerequisite of his employment with the Company. Employee acknowledges that he has had the opportunity to consider this Agreement and confer with anyone of his choice concerning this Agreement and that, by signing below, he acknowledges he is entering this Agreement knowingly and voluntarily and intends to be bound by it.*

(Remainder of this page intentionally left blank.
Signature page follows.)

Exhibit 1 - Page 19 of 21

Scanned by CamScanner

IN WITNESS WHEREOF, the Company and Employee have executed this Restrictive Covenant and Work Made For Hire Agreement as of the date first set forth above.

**VERMILLION ASSET MANAGEMENT LLC**

Andrew Gilbert
Managing Partner

Christopher Zuech
Chief Operating Officer

**EMPLOYEE**

Nikhil Dhir
3333 Allen Parkway, Apt 309
Houston, TX 77019

Exhibit 1 - Page 20 of 21

Scanned by CamScanner

## PROSPECTIVE EMPLOYEE DILIGENCE QUESTIONNAIRE

The Carlyle Group is subject to a number of restrictions with regard to its interactions with U.S. state and local government entities (including public pension funds), including, most significantly, the New York Attorney General's Public Pension Fund Reform Code of Conduct, as adopted by Carlyle on May 14, 2009 (the "Code") and Rule 206(4)-5 under the Investment Advisers Act of 1940 (the "SEC Pay-to-Play Rule"). Carlyle has adopted certain written procedures (the "Procedures") in order to set forth the internal safeguards and other measures designed to monitor and ensure compliance with the Code and the SEC Pay-to-Play Rule. The following questions are necessary for Carlyle's compliance with such Procedures.

- Within the past two years, have you given any campaign contribution, gift or anything else of value to any *federal, state* or *local* candidates, state or local officials or state or local political parties in the United States?

    ☐ Yes          ☑ No

    If so, please indicate below (*i*) the amount, (*ii*) the office the candidate was running for or the office of the state or local official, as applicable and (*iii*) whether or not you were entitled to vote for the candidate or official:

    _____

    _____

    _____

- Within the past two years, have you been employed by any public pension fund in the U.S. or served as a fiduciary or elected or appointed trustee or other official, staff member or employee whose official duties involve responsibility for the investments of a U.S. public pension fund?

    ☐ Yes          ☑ No

    If so, please identify the U.S. public pension fund and describe the relationship:

    _____

    _____

    _____

- Do you have any financial, commercial or business relationship (whether direct or indirect) with (*i*) any fiduciary or elected or appointed trustee or other official, staff member or employee of a U.S. public pension fund whose official duties involve responsibility for such public pension fund, (*ii*) any external firm or individual engaged by a U.S. public pension fund to assist such public pension fund in the selection of investments or the provision of investment management services or (*iii*) any household members of any of the foregoing?

    ☐ Yes          ☑ No

    If so, please identify the public pension fund and the persons(s) with whom you have a relationship and briefly describe the nature of the relationship:

    _____

    _____

    _____

    _____

You, the undersigned, hereby certify, represent, warrant and covenant to Carlyle that all information provided in this Questionnaire is true, correct and complete as of the date of hereof.

Certified as of:  __October 1, 2012__
                 (Today's date)

                                          _____
                                          Applicant Signature

                         Nikhil Dhir
                         _____
                                          Print Name

Exhibit 1 - Page 21 of 21

Scanned by CamScanner